961 A.2d 732 (2008)
404 N.J. Super. 278
SAVE HAMILTON OPEN SPACE, Plaintiff-Appellant,
v.
HAMILTON TOWNSHIP PLANNING BOARD, Gres and Kaluzny Land Development, L.L.C., and John and Eileen Haller, Defendants-Respondents.
DOCKET NO. A-1795-07T2.
Superior Court of New Jersey, Appellate Division.
Argued September 23, 2008.
Decided November 7, 2008.
Stuart J. Lieberman, Princeton, argued the cause for appellant (Lieberman & Blecher, attorneys; Mr. Lieberman, on the brief).
Michael W. Herbert, Princeton, argued the cause for respondent Hamilton Township Planning Board (Herbert, Van Ness, Cayci & Goodell, attorneys; Mr. Herbert, on the brief).
Henry T. Chou, Princeton, argued the cause for respondents Gres and Kaluzny Land Development, L.L.C. and John and Eileen Haller (Hill Wallack, attorneys; Mr. Chou and Donald R. Daines, on the brief).
Michele R. Donato, Lavallette, argued the cause for amici curiae Save Barnegat Bay and The Sierra Club New Jersey Chapter.
Before Judges SKILLMAN, GRAVES and GRALL.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
On May 13, 2004, defendant Gres and Kaluzny Land Development, L.L.C. (Land Development), the contract purchaser of a 7.68-acre parcel of land in Hamilton Township, Mercer County, obtained preliminary subdivision approval from defendant Hamilton Township Planning Board for a subdivision of seventeen lots, sixteen of which would be utilized for single-family detached residences and one of which would *733 be utilized for a detention basin. This approval was subject to numerous conditions including condition x, which stated:
The plans shall comply with the recently adopted NJDEP Phase II Storm Water Regulations. The applicant shall demonstrate compliance with the new regulations.
On March 10, 2005, the Board granted Land Development final subdivision approval for its residential development project. This approval also was subject to numerous conditions including conditions, which stated:
The plans shall comply with NJDEP Phase II Storm Water Regulations. The applicant needs to demonstrate compliance. This will require revisions to the Stormwater plan to the outfall structure and an acceptable maintenance plan for the basin.
Plaintiff Save Hamilton Open Space filed an action in lieu of prerogative writs challenging the preliminary and final subdivision approvals granted to Land Development. One ground of its challenge was that Land Development's stormwater management plan failed to comply with the new stormwater management regulations adopted by the Department of Environmental Protection (DEP), N.J.A.C. 7:8-1.1 to -6.3, commonly referred to as the "Phase II" regulations.
The trial court rejected plaintiff's challenges and approved the preliminary and final subdivision approvals granted to Land Development. In rejecting plaintiff's argument that Land Development had failed to demonstrate compliance with the DEP Phase II stormwater regulations, the court stated:
This court finds the Board properly approved the major subdivision plan subject to specific conditions as permitted by N.J.S.A. 40:55D-22. Importantly, the Board recognized the need for the applicant to comply with storm water management issues.... Furthermore, the Board conditioned approval on review by specific outside agencies that address these issues. See N.J.S.A. 40:55D-22b.
If NJDEP review drastically changes the subdivision plan, the Board is within its authority to require the applicant to seek preliminary major subdivision approval.
On appeal from the judgment memorializing this ruling, plaintiff argued, among other things, that the subdivision approval was invalid because the Board had erroneously relied on other governmental agencies to review Land Development's final stormwater management plan. In addition, amici curiae New Jersey Audubon Society, Save Barnegat Bay and the Sierra Club argued that the trial court had erroneously assumed that another governmental agency would be responsible for approving the stormwater management plan.
We affirmed the judgment dismissing plaintiff's challenge to the subdivision approval granted to Land Development. Save Hamilton Open Space v. Hamilton Twp. Planning Bd., No. A-0066-05, 2006 WL 1932564 (App.Div. July 14, 2006). In rejecting plaintiff's argument regarding the Board's reliance upon other agencies to review Land Development's stormwater management plan, we stated:

The Board acted reasonably and appropriately in requiring approval of the NJDEP for the final stormwater management plans as a condition of granting the subdivision application. The Board has statutory authority to condition its approval on subsequent approvals of other governmental agencies in appropriate instances. N.J.S.A. 40:55D-22b. This was an appropriate instance in view of NJDEP's broad statutory *734 authority regarding stormwater management including the authority "to regulate municipal and regional stormwater management planning...." In re Stormwater Mgmt. Rules, 384 N.J.Super. 451, 460, 894 A.2d 1241 (App.Div. 2006).
[2006 WL 1932564, *4 (emphasis added).]
Nevertheless, in response to the amici curiae's contention that no other government agency would review Land Development's stormwater management plan to determine its compliance with the DEP's Phase II regulations, we remanded the case to assure that such review was conducted and that the public had an adequate opportunity to be heard. In explaining our reasons for this remand, we stated:
We are mindful of the concern of plaintiff and amici curiae that the other governmental agencies may not act or the public may not have an opportunity to be heard on any final storm management plans. To assuage that concern, we will exercise our original jurisdiction, see R. 2:10-5, and direct that lots not be sold until the approvals of the agencies have been obtained, and the Planning Board has reviewed and approved the final plans at a public meeting.
[2006 WL 1932564, * 4.]
The Supreme Court denied a petition for certification filed by plaintiff. 188 N.J. 576, 911 A.2d 68 (2006).
Following the issuance of our prior opinion, Land Development did not obtain an approval of its stormwater management plan from the DEP or any other governmental agency. Nevertheless, on February 20, 2007, the Board posted to its website an addendum that stated it would hear this matter at its regularly scheduled February 22, 2007 public meeting. The Board did not give plaintiff any individual notice of the hearing, and plaintiff's counsel did not find out it had been scheduled until the day of the hearing. Plaintiff's counsel objected to the lack of adequate notice and asked that the matter be removed from the Board's agenda. However, the Board denied this request and proceeded to hear the matter that night.
At the hearing, plaintiff's attorney contended that the stormwater management plan had failed to comply with the Phase II regulations at the time the Board granted final subdivision approval and that Land Development had not submitted any evidence to show that the plan now complied. He pointed out that plaintiff had always maintained that the DEP did not review such plans, and that because the Board and Land Development now agreed that no separate DEP review would occur, plaintiff wanted to examine any documents Land Development had submitted to the Board to demonstrate compliance with the Phase II regulations. Land Development's counsel responded that its stormwater management plan had been on file with the Board since February 2005. However, plaintiff's counsel stated that its expert had reviewed that plan and found it to be non-compliant with the Phase II requirements. After hearing further argument, the Board reaffirmed its approval of Land Development's subdivision application. This decision was memorialized by a resolution adopted on April 12, 2007.
Plaintiff filed a new action in lieu of prerogative writs challenging the resolution. Plaintiff claimed that the Board had failed to give the notice of the remand hearing required by the Open Public Meetings Act (OPMA), N.J.S.A. 10:4-6 to -21, and Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-1 to -99. Plaintiff also claimed that the Board's refusal to grant its request for an adjournment of the hearing was arbitrary, capricious and unreasonable. In addition, plaintiff claimed that *735 Land Development failed to establish that the DEP had approved its stormwater management plan as compliant with the Phase II regulations.
By an opinion dated November 7, 2007, the trial court rejected all of plaintiff's challenges to the conduct of the hearing on remand and to the Board's April 12, 2007 resolution reaffirming its approval of Land Development's subdivision application. In rejecting plaintiff's argument that Land Development had not obtained the DEP's approval of its stormwater management plan, the court concluded that an "Authorization to Discharge Stormwater," which the Mercer County Soil Conservation District and the DEP's Bureau of Nonpoint Pollution Control issued to Land Development on June 7, 2005, constituted the required DEP approval of Land Development's stormwater management plan as compliant with the Phase II stormwater regulations. In reaching this conclusion, the court stated:
Based on applicant receiving the "Authorization to Discharge Stormwater" and "General Permit" and the process described above, the court is satisfied NJDEP approval was obtained. The permit obtained by applicant is the only permit regarding "Phase II" compliance.
On appeal, plaintiff argues that the Board failed to give adequate notice of the remand hearing required by the OPMA, the MLUL and this court's prior opinion. Plaintiff also argues that the Board acted arbitrarily in denying its request for an adjournment of the hearing and that the Board and its counsel continually harassed plaintiff's counsel at the hearing and consequently the hearing was conducted in a procedurally unfair manner. In addition, plaintiff argues that the trial court erred in finding that the DEP had approved Land Development's stormwater management plan as compliant with the Phase II regulations.
We conclude that the DEP did not approve Land Development's stormwater management plan as compliant with the Phase II regulations. Moreover, those regulations do not provide for DEP review to determine such compliance. Instead, it is the responsibility of the municipal land use agency to determine compliance with the Phase II regulations. Therefore, the matter must be remanded to the Board for this purpose. These conclusions make it unnecessary to consider plaintiff's arguments regarding the adequacy of notice and fairness of the hearing.
Initially, we note that the document that the trial court found to reflect the DEP's approval of Land Development's stormwater management plan as compliant with the Phase II regulations was dated June 7, 2005, which was before both the trial court's and this court's prior opinions. However, defendant never contended at that stage of the litigation that the condition of subdivision approval that Land Development demonstrate compliance with the Phase II stormwater management regulations had already been satisfied. Instead, this contention was presented for the first time at the remand hearing.
In any event, it is clear on the face of the June 7, 2005 permit that it constitutes approval only for construction activity. The permit is captioned: "NJPDES General Permit No. NJ0088323 (N.J.A.C. 7:14A-11 Appendix B) Stormwater Discharge Associated with Construction Activity." (emphasis added). In addition, the permit indicates that one of the circumstances under which the authorization it provides will expire is: "Project Completed (Final Report of Compliance Issued)."
The administrative regulation cited in the caption to the permit also indicates that a stormwater discharge permit issued *736 thereunder pertains to "the discharge of pollutants into surface waters of the State from any point source, stormwater discharge associated with industrial activity or small construction activity, and nonpoint sources regulated under N.J.A.C. 7:14A-2.5(d) or 24.2(a)7ii." N.J.A.C. 7:14A-11.1 (emphasis added). A permit for stormwater discharge for the purpose of "small construction activity" cannot be viewed as an approval of compliance with stormwater management regulations applicable to the design of an entire residential development.
Moreover, the Phase II stormwater management regulations do not include any provision for DEP review to determine compliance. See N.J.A.C. 7:8-1.1 to -6.3. Consequently, unless a developer is required to obtain a permit under another DEP regulatory program, such as the Coastal Area Facility Review Act, N.J.S.A. 13:19-1 to -44, or Freshwater Wetlands Protection Act, N.J.S.A. 13:9B-1 to -30, the determination of compliance with the Phase II regulations must be made by the planning board as part of its review of a land use application under the MLUL and the statewide rules that govern streets, water supply, sanitary sewer systems, and stormwater management, adopted pursuant to the Residential Site Improvement Standards Act, N.J.S.A. 40:55D-40.1 to -40.7, commonly referred to as the Residential Site Improvement Standards (RSIS). N.J.A.C. 5:21-1.1 to -8.1; see In re Freshwater Wetlands Statewide Gen. Permits, 185 N.J. 452, 465, 888 A.2d 441 (2006); In re Stormwater Mgmt. Rules, 384 N.J.Super. 451, 457 n. 1, 894 A.2d 1241 (App. Div.), certif. denied, 188 N.J. 489, 909 A.2d 724 (2006).
The DEP made this intent clear in its responses to the public comments regarding the Phase II regulations:
Implementation of the stormwater management measures established in these rules is through the existing Municipal Land Use Law approval process and the Department's Land Use Regulation Program permits (for example, Stream Encroachment, Waterfront Development, Freshwater Wetlands, CAFRA). This chapter does not expand or create new jurisdiction for these existing permit and approval processes; rather it stipulates certain environmental performance standards to be met once such jurisdiction has been established or triggered by a development proposal or permit application....
The standards established under this chapter are the same standards as the Residential Site Improvement Standards that would be applied through municipal approval pursuant to the Municipal Land Use Law if the proposed project is a residential development that meets the definition of "major development" and requires municipal approval. Complying with this uniform set of standards is required of all "major development" through either local or Department approval, unless the project is exempt from this chapter under N.J.A.C. 7:8-1.6(b).
[36 N.J.R. 781(a) (emphasis added).]
The DEP's website also explains that the process for applying the Phase II regulations to a proposed residential development is achieved through the ordinary channels of municipal land use planning and approvals:
The Stormwater Management Rules became effective on February 2, 2004. At that time, the design and performance standards of these rules became incorporated into the Residential Site Improvement Standards....

Specifically, if your project is: 1) a "major development", 2) a residential *737 site improvement and 3) not otherwise exempt from these rules, then the requirements of the rules will be applied to your project when you apply for municipal approval.

[DEP, Stormwater Management Rule Frequently Asked Questions § 1.2, http://www.nj.gov/dep/watershedmgt/stormwaterfaqs2.htm (emphasis added).][1]
Furthermore, the RSIS requires compliance with the DEP stormwater management regulations, which are set forth in Appendix B, see, e.g., N.J.A.C. 5:21-7.5 to -7.7.
Moreover, the DEP, in its response to the public comments regarding the Phase II regulations, expressly stated that the permit review conducted by a soil conservation district does not constitute review for compliance with those regulations:
Reviews conducted by the Soil Conservation Districts are limited in scope to the application of proper soil erosion and sediment controls during construction. The primary purpose of the Soil Erosion and Sediment Control Standards is to address soil erosion and not to address other pollutants or the long-term pollutant loads that will result from the constructed project.
[36 N.J.R. 781(a) (emphasis added).]
For these reasons, we conclude that the DEP "general permit" for "Stormwater Discharge Associated with Construction Activity" issued to Land Development by the Mercer County Soil Conservation District and the DEP Bureau of Nonpoint Pollution Control did not reflect a determination by DEP of compliance with the Phase II stormwater management regulations. Instead, the Board had the responsibility under the RSIS regulations for determining such compliance. It is also clear from the testimony of the Township Engineer, Thomas Dunn, at the hearings on the applications for preliminary and final subdivision approval that the Board and its experts never made a finding of such compliance. Therefore, the Board must now conduct a plenary hearing to determine whether the Land Development residential development project complies with the DEP Phase II stormwater management regulations. Plaintiff should be allowed to present expert testimony regarding this issue and to cross-examine any experts presented by Land Development. Plaintiff also should be provided with advance notice of the hearing and access to the documentation and plan on which Land Development intends to rely to demonstrate compliance with the Phase II regulations.
Accordingly, the judgment dismissing plaintiff's complaint is reversed, and the case is remanded to the Board to conduct a hearing regarding the compliance of Land Development's stormwater management plan with the Phase II regulations.
NOTES
[1] We note that "[m]ajor development" is defined as "any `development' that provides for ultimately disturbing one or more acres of land or increasing impervious surface by one-quarter acre or more." N.J.A.C. 7:8-1.2. "Disturbance" is defined as "the placement of impervious surface or exposure and/or movement of soil or bedrock or clearing, cutting, or removing of vegetation." Ibid. It is clear from these definitions that Land Development's construction of sixteen residences and a detention basin involved a "disturbance" of its land and therefore constitutes a "major development."